FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 28, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARCUS L.,[1]<br><br>           Plaintiff,<br><br>    v.<br><br>LELAND DUDEK, Acting Commissioner of Social Security,[2]<br><br>           Defendant. | No.  4:24-cv-376-EFS<br><br><br>**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |

Plaintiff Marcus L. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits. Because the

----

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

[2] Leland Dudek has been named the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is hereby substituted as the Defendant.

DISPOSITIVE ORDER - 1

ALJ failed to fairly and fully consider the treatment records and mental-health medical opinions, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

On February 22, 2021, Plaintiff applied for benefits, at the age of 28, claiming disability under Titles 2 and 16, beginning February 1, 2020, based on physical and mental impairments.[3] The agency denied Plaintiff's applications for benefits; thereafter, ALJ Joyce Frost-Wolf held a telephonic hearing in September 2023, at which Plaintiff and a vocational expert testified.[4]

Plaintiff, who has a GED, testified about his most recent jobs, including working at a cabinetry company for one of his brothers doing tasks such as putting on hinges.[5] Plaintiff testified that, even though his brother was his supervisor and was patient with his mistakes, he

---

[3] AR 228–52.

[4] AR 51–84, 131–38.

[5] AR 59–61.

ultimately had to stop working due to his poor performance.[6] He also worked for his brother-in-law in the construction industry, helping retrieve tools or ladders; he did not do any cutting or measuring because he has difficulty following instructions.[7] Again, he lost that employment due to poor performance.

Plaintiff testified that he last used methamphetamine and heroine in 2021.[8] Plaintiff said that his post-traumatic stress disorder (PTSD) is triggered sometimes when watching television or by a loud noise and that being around too many people triggers his anxiety and panic attacks.[9] To feel secure, he rarely leaves the house, and his paranoia causes him to see things several times a week.[10] Plaintiff stated that his driver's license is suspended, and if he goes shopping,

---

[6] AR 61, 72.

[7] AR 70.

[8] AR 64.

[9] AR 68–69.

[10] AR 63, 69.

DISPOSITIVE ORDER - 3

he has a caregiver go with him.[11] He said he can help with dishes and other light house chores if his paranoia, panic attacks, and legs are not bothering him.[12] He shared that he plays computer games and watches TV.[13]

After the hearing, the ALJ issued a decision denying benefits.[14] The ALJ found Plaintiff's alleged symptoms were not entirely

---

[11] AR 62.

[12] AR 62.

[13] AR 62.

[14] AR 19–50. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled. If there is medical evidence of drug or alcohol addiction, the ALJ must then determine whether drug or alcohol use is a material factor contributing to the disability. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935; *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

consistent with the medical evidence and other evidence.[15] The ALJ considered the lay statement from Plaintiff's mother.[16] As to the mental-health opinions,[17] the ALJ found:

- the prior administrative findings of Vincent Gollogly, PhD, and Renee Eisenhauer[18] partially persuasive.

- the evaluating opinions of Thomas Genthe, PhD, not persuasive.[19]

As to the sequential disability analysis, the ALJ found:

---

[15] AR 34–37. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[16] AR 33, 318.

[17] Because Plaintiff's appeal focuses solely on his mental-health impairments, the Court discusses only the mental-health opinions.

[18] The record does not identify Renee Eisenhauer's degree but lists her name after "MC/PC Signature" and identifies "Medical Specialty Code: 38 Psychology." AR 111.

[19] AR 38–41.

- Plaintiff met the insured status requirements through June 30, 2023.

- Step one: Plaintiff had not engaged in substantial gainful activity since February 1, 2020, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: lumbar degenerative disc disease; depressive disorder; anxiety disorder; cardiomyopathy, status post valve repair; polysubstance use; schizophrenia; PTSD; attention deficit hyperactivity disorder (ADHD); and right leg status-post surgeries for necrotizing issues.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work except:

  the claimant can occasionally use ramps or stairs; cannot use ladders, ropes, or scaffolds; can occasionally perform balancing, stooping, kneeling, crouching, or crawling; occasional work around heavy machinery with fast moving parts or at unprotected heights; can understand and remember simple tasks; can maintain attention, concentration, and pace for simple tasks in two hour periods; can have occasional public contact without tasks that require public interaction (examples of tasks requiring public

> interaction are jobs with tasks that require a transaction with the public, monitoring or supervising the public, or answering public questions); can have occasional co-worker and supervisor contact other than periods of instruction (periods of instruction being the initial training and explanation of changes to work tasks or routine); can make simple work-related decisions; and can tolerate occasional changes to job tasks with explanation provided.

- Step four: Plaintiff cannot perform past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as electrode cleaner, garment folder, and bakery inspector.[20]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[21]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error

---

[20] AR 22–44.

[21] AR 1–6.

impacted the nondisability determination.[22] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[23]

### III.   Analysis

Plaintiff argues the ALJ improperly evaluated the medical

---

[22] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error).

[23] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

evidence, thereby erring at steps three and five.[24] In response, the Commissioner argues that the ALJ's findings are supported by substantial evidence. Although Plaintiff's brief should have more clearly articulated his challenges, Plaintiff's claim that the ALJ erred when interpreting the medical evidence sufficiently reveals that the ALJ's nondisability decision is not supported by substantial evidence.

## A.    The ALJ cherrypicked normal mental-health findings.

Throughout her decision, the ALJ relied on largely the same handful of medical records, namely records from January 20, 2021, May 20, 2021, September 24, 2021, February 16, 2022, April 4, 2023, and June 26, 2023.[25] Even though an ALJ need not discuss every bit of evidence in the record, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. [She] must be especially diligent in ensuring that

---

[24] Plaintiff does not challenge the ALJ's findings as to Plaintiff's physical abilities. ECF No. 8 at 7. In response, the Commissioner highlights that Plaintiff did not support a step-two challenge.

[25] *See* AR 27–32.

favorable as well as unfavorable facts and circumstances are elicited."[26] The ALJ failed to do so here.

Instead, the ALJ focused on these few medical records without considering them in their full and fair context. For instance, the January 20, 2021 record that the ALJ repeatedly relied on for the premise that Plaintiff had normal mental-health findings also documented that the evaluator opined that Plaintiff "continues to need outpatient treatment. He continues to exhibit symptoms of any emotional disorder that inferfere[s] with day to day functioning and he is unable to alleviate these symptoms on his own."[27]

Second, the ALJ repeatedly relied on a May 20, 2021 medical record to support the finding that Plaintiff's observed mental-health symptoms were more normal than abnormal. [28] While the ALJ's summary of the cited record is accurate, it ignores other treatment

_____

[26] *Garcia v. Comm'r of Social Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) (omitting source citations).

[27] AR 595.

[28] AR 27–AR 31 (citing AR 341).

records from that day and nearby days. A different hospital record from May 20, 2021, indicates that Plaintiff refused lab draws on many occasions, and another record stated that Plaintiff had a flat affect but showed some hopefulness about being done with his antibiotics soon.[29] The day before May 20, 2021, the hospital record indicates that Plaintiff was avoiding eye contact, appeared anxious, and had a blunted affect with restricted range.[30] The day after May 20, 2021, hospital records indicate that Plaintiff was irritable, agitated, refusing care, avoiding eye contact, appeared anxious, had a blunted affect with restricted range, had poor insight and limited judgment, and was confused about the administration of his medication.[31]

Third, when summarizing the February 16, 2022 medication-management record, the ALJ listed the normal mental-health findings but did not note that Plaintiff was observed with mild anxiety, which

---

[29] AR 1014, 1019.

[30] AR 1004.

[31] AR 1019–35, 3345.

was observed at some of the other medication-management appointments as well.[32]

Fourth, the ALJ cited an April 4, 2023 medical record, summarizing that Plaintiff "was alert and oriented to person, place, and time, had normal appearance, and had normal mood and had normal behavior."[33] However, the provider authorizing this record also noted that Plaintiff shared that he has:

> been having problems with increased anxiety and at least 1 panic attack that has occurred recently. The patient had been scheduled to see me a few weeks ago. The patient checked in for his appointment, but ended up leaving shortly after checking in because of significant anxiety that had developed prior to the office visit. The patient ended up

---

[32] AR 27, 5108, 5093, 5013, 5243, 5215; AR 5276 (noting that Plaintiff was tearful and upset). *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

[33] AR 27 (citing AR 5235).

driving home and locking himself in his apartment. Family members and his caregiver had quite a bit of difficulty calming him down. The patient has had quite a bit of anxiety which has been increasing over time despite his current medication regimen of duloxetine 60 mg daily, BuSpar 15 mg twice daily, risperidone 2 mg twice daily, hydroxyzine 50 mg daily as needed, and venlafaxine 75 mg daily. The patient is requesting to have something on hand to use in the event of another panic attack, if it occurs. The patient also has an office visit to establish care with Jonathan Ingram, ARNP in a week.[34]

A treatment record the next week reflects that Plaintiff was observed as disheveled and guarded although cooperative and engaged, with poor hygiene, deficient judgment, fair insight, restless psychomotor, and as anxious, depressed, and irritable.[35]

A full and fair review of the medical record reveals that the ALJ's interpretation of the medical record is not supported by substantial evidence.[36] While an ALJ need not address every piece of evidence, an

---

[34] AR 5224.

[35] AR 5223–30.

[36] *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (emphasizing that treatment records must be viewed considering the overall diagnostic record); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th

DISPOSITIVE ORDER - 13

1  ALJ "may not ignore significant probative evidence that bears on the

2  disability analysis."[37] Here, the ALJ erred by ignoring significant

3  probative evidence.

4  **B.    The ALJ erred when evaluating the mental-health**

5  **opinions and administrative findings.[38]**

6          An ALJ must consider and articulate how persuasive she found

7  each medical opinion and prior administrative medical finding,

8  including whether the medical opinion or finding was consistent with

9

10  _____

11  Cir. 1984) (disallowing the ALJ from cherry picking evidence to support

12  a conclusion that contradicts the overall diagnostic record).

13  [37] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).

14  [38] The Commissioner argues that Plaintiff did not challenge the ALJ's

15  evaluation of the mental-health medical opinions. Because this matter

16  is being remanded for reevaluation, addressing the ALJ's errors as to

17  the mental-health medical opinions is necessary to ensure that the ALJ

18  considers—fairly—both required supportability and consistency factors

19  on remand.

1    and supported by the record.[39] The factors for evaluating

2    persuasiveness include, but are not limited to, supportability,

3    consistency, relationship with the claimant, and specialization.[40]

4    Supportability and consistency are required factors.[41] When

5    considering the ALJ's findings, the court is constrained to the reasons

6    and supporting explanation offered by the ALJ.[42]

7        Here, the ALJ failed to consider both the supportability and

8    consistency factors when evaluating the mental-health medical

9    opinions and prior administrative findings, offering instead conclusory

10    findings. For instance, as to Dr. Gollogly and State agency

11    psychological consultant Eisenhauer, the ALJ summarized the opinions

12    of these medical professionals, found the opinions partially persuasive,

13

14

_____

15    [39] 20 C.F.R. §§ 404.1520c, 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th

16    785, 792 (9th Cir. 2022).

17    [40] 20 C.F.R. §§ 404.1520c, 416.920c(c)(1)–(5).

18    [41] *Id.* §§ 404.1520c, 416.920c(b)(2).

19    [42] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

cited to the previously relied-on medical records, and then offered a

conclusory finding that:

> the claimant retained the functional abilities in the above
> residual functional capacity, and I accounted for the
> combination of the claimant's impairments and symptoms,
> such as mood swings, irritability, anxiety, panic attacks,
> paranoia, hallucinations, delusions, cognitive issues,
> memory issues, flashbacks, and hypervigilance, with the
> limitations in the above residual functional capacity, which
> include nonexertional mental limitations.[43]

The ALJ's analysis does not identify which portions of the opinions

were persuasive and which portions were not persuasive. By deduction,

the ALJ found Dr. Gollogly's and Ms. Eisenhauer's opinions that

Plaintiff was capable of only infrequent changes and brief and

superficial interactions with the public, coworkers, and supervisor not

persuasive as these opined limitations were not included in the RFC.

Instead, the RFC permits occasional changes and occasional

interactions with the public, coworkers, and supervisor and allowed for

more contact with the supervisor during the training period. The ALJ's

barebones analysis fails to explain why the ALJ's evaluation of the

---

[43] AR 38–39 (internal citations omitted).

medical evidence results in a different assessment of Plaintiff's functional abilities than Dr. Gollogly and Ms. Eisenhauer.[44] Dr. Gollogly and Ms. Eisenhauer reviewed the same medical records as the ALJ and determined that a more stringent RFC was necessary to account for Plaintiff's impairments and symptoms. Critically absent from the ALJ's analysis is meaningful explanation as to why Dr. Gollogly's and Ms. Eisenhauer's opinions are not supported by their notation that Plaintiff had been observed by treating providers as verbally aggressive, irritable, and leaving against medical advice; the ALJ fails to meaningfully explain why Plaintiff's full orientation with good eye contact, normal speech, and thought process on other occasions is a reason to find these opinions as unsupported by

---

[44] *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than state conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors' [opinions] are correct.").

Plaintiff's aggressive and irritable conduct on other occasions.[45] This error in the ALJ's supportability analysis is compounded by the ALJ's failure to discuss that Dr. Gollogly's and Ms. Eisenhauer's opinions regarding Plaintiff's interactions with others and handling change appear to be consistent with Dr. Genthe's opinion that Plaintiff was markedly limited in several non-exertional abilities.[46]

---

[45] 20 C.F.R. §§ 404.1520c, 416.920c. *See* 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

[46] 20 C.F.R. §§ 404.1520c(b)(2), (c), 416.920c(b)(2), (c); *See Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017); *Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole and assess the amount of relevant evidence that supports the opinion).

Dr. Genthe conducted a psychological evaluation of Plaintiff on two occasions, once in February 2020 and again in November 2020. The ALJ noted that Dr. Genthe opined that Plaintiff was markedly limited in several nonexertional abilities, including maintaining appropriate behavior in a work setting, adapting to changes in a routine work setting, and communicating and performing effectively in a work setting.[47] The ALJ found the opinions set forth in Dr. Genthe's reports unpersuasive. The ALJ supported her finding by summarizing the previously relied on medical records and stating:

> This evidence, such as the evidence of normal mood, normal behavior, normal attention span, average estimated intellectual level, and no signs of cognitive difficulty is not consistent with the degree of opined limitations by Dr. Genthe. . . . I accounted for the combination of the claimant's impairments and symptoms, such as mood swings, irritability, anxiety, panic attacks, paranoia, hallucinations, delusions, cognitive issues, memory issues, flashbacks, and hypervigilance, with the limitations in the above residual functional capacity, which include nonexertional mental limitations.[48]

[47] AR 39–40.

[48] AR 41.

1  The ALJ's analysis fails to assess the consistency between Dr. Genthe's

2  opinions and the prior administrative mental-health opinions and fails

3  to compare Dr. Genthe's opinions with treatment records. Moreover,

4  Dr. Genthe did not base his opinions on any cognitive disorder or lower

5  intellectual level; therefore, this was not a legitimate basis for the ALJ

6  to discount Dr. Genthe's opinions.[49]

7      In summary, the ALJ's evaluation of the mental-health medical

8  opinions were cursory and superficial, preventing meaningful court

9  review.[50]

10  _____

11  [49] *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (recognizing that

12  it is not legitimate to discount an opinion for a reason that is not

13  responsive to the medical opinion).

14  [50] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v.*

15  *Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to

16  identify the evidence supporting the found conflict to permit the court

17  to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d

18  565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and

19  logical bridge from the evidence to her conclusions so that we may

## C.    Remand: further proceedings

Plaintiff seeks a remand for payment of benefits, submitting he meets or equals a listing level of impairment based on his mental health. Although remand for further proceedings is the ordinary course, the decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[51] Here, remand is necessary to allow the ALJ—rather than this Court—to fairly and fully evaluate the medical record before reassessing the listings and what, if any, additional limitations are to be added to the RFC.

## D.    Conclusion

Plaintiff establishes the ALJ. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary

_____

afford the claimant meaningful review of the SSA's ultimate findings.").

[51] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

support—the sequential process. Accordingly, **IT IS HEREBY**

**ORDERED**:

    1.    The ALJ's nondisability decision is **REVERSED, and this**

        **matter is REMANDED to the Commissioner of Social**

        **Security for further proceedings pursuant to**

        **sentence four of 42 U.S.C. § 405(g)**.

    2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF**

        **Nos. 8 and 16**, enter **JUDGMENT** in favor of **Plaintiff**,

        and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this

order and provide copies to all counsel.

DATED this 28th day of April 2025.

_Edward F. Shea_
_____

EDWARD F. SHEA
Senior United States District Judge